[Cite as *State v. Kilgore*, 2025-Ohio-901.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. Michael D. Hess, J. |
| | : | Hon. Jason P. Smith, J. |
| | : | |
| | : | Judges Hess and Smith Sitting by |
| | : | Assignment by the Supreme Court of |
| | : | Ohio |
| -vs- | : | |
| | : | |
| RICHARD KILGORE, | : | Case No. 24AP0002 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Morgan County
                             Clerk of Court, Case No. 2023-CR-
                             B-0212

JUDGMENT:                    Affirmed in part;
                             Reversed in part

DATE OF JUDGMENT:            March 14, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JANNA C. WOODBURN                         BRIAN W. BENBOW
Assistant Prosecuting Attorney            Benbow Law Offices LLC
19 East Main Street                       803 Taylor Street
McConnelsville, Ohio 43756                Zanesville, Ohio 43701

*Baldwin, P.J.*

**{¶1}**    The appellant, Richard Kilgore, appeals his conviction of Domestic Violence and Resisting Arrest. Appellee is the State of Ohio.

**STATEMENT OF THE FACTS AND THE CASE**

**{¶2}**    On or about November 6, 2023, the appellant was charged with one count of Domestic Violence in violation of R.C. §2919.25(C) and one count of Resisting Arrest in violation of R.C. §2921.33(A).

**{¶3}**    On February 12, 2024, the matter proceeded to a jury trial.

**{¶4}**    At trial, D.K. testified that she lives in an apartment complex in Morgan County. She is married to the appellant, but they are estranged. D.K. has three children.

**{¶5}**    D.K. continued to testify that she woke up on October 29, 2023, and started cleaning. The appellant was already messaging her about retrieving some items from storage. That evening, the appellant started sending profanity-laden threats to D.K. over Facebook Messenger. He threatened to drive through her front door. He continued by messaging her, "[t]he funny thing is you're going to hear me fucking coming, bitch." D.K. asked the appellant to stop. He responded, "[f]ucking listen for them pipes, bitch," and "You want to fucking ignore me all day and treat me like I'm a worthless piece of shit, I'm going to show you a fucking worthless piece of shit. You want me, God, motherfucker. I'll rot in fucking prison." D.K. told him not to hurt the children. He responded, "[y]eah, bitch, you'll see," and he repeated, "You want to fucking ignore me and treat me like fucking shit, like I'm a fucking worthless piece of shit, you're going to see it worth this piece of shit bitch. I'll run fucking prison." She asked him to stop, and he attempted to call her multiple times. She stated that she took the children upstairs in her apartment and to the back of

the bedroom to make sure they were not where the car would crash through the apartment.

{¶6}   D.K. said she left the apartment because she was scared of the building coming down if he drove his car through it. Her friend then told her the cops were on the way, so she returned to the apartment.

{¶7}   She could hear the appellant's vehicle revving outside and saw it lined up with her apartment. It made her feel scared and terrified. D.K. then said it sounded like the appellant was kicking at the door. Eventually, she heard a knock at the door, and she could see law enforcement had arrived, so she opened the door.

{¶8}   On cross-examination, D.K. noted two concrete steps between the vehicle and the door to her apartment. She also noted that there were several items on the steps. She still felt like he would be able to drive the vehicle up the stoop and into the apartment.

{¶9}   Next, D.K.'s friend from work testified that D.K. contacted her via messenger and sounded scared of the appellant. D.K.'s coworker stated that she called the police because D.K. did not know how to get ahold of them as her cellular service was not connected. In the background, she could hear the children screaming in fear. By the time she arrived on the scene, the police were already there.

{¶10}  Former Deputy Shawn Pettet next testified that on October 29, 2023, he was dispatched to D.K.'s apartment for a disturbance between a husband and a wife. The former deputies' body cam footage showed the appellant being erratic and swearing a lot. Pettet swore back at him and called him a "cry baby." Whenever the former deputy approached the appellant, the appellant would back up or change direction and not let the Deputy get close. During one exchange between the appellant and former Deputy

Pettet, Pettet said, "if you're going to run, run, now's your chance." The appellant eventually backed up onto a busy roadway. The appellant then ran off into a nearby field.

{¶11} The jury returned a verdict of guilty on both counts.

{¶12} The appellant filed a timely notice of appeal and herein raises the following two assignments of error:

{¶13} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR AN AQUITTAL UNDER CRIM.R. 29.

APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE BY THREAT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1 & 16 OF THE OHIO CONSTITUTION.

{¶14} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR AN ACQUITTAL UNDER CRIM.R. 29.

THE TRIAL COURT ERRED IN CONVICTING APPELLANT AND IN DENYING HIS MOTION FOR ACQUITTAL. APPELLANT'S CONVICTION FOR RESISTING ARREST WAS AGAINST BOTH THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 1 & 16 OF THE OHIO CONSTITUTION AND IN VIOLATION OF THE OHIO SUPREME COURT'S HOLDING IN *STATE V. BROWN*, 99 OHIO ST.3D 323 HOLDING THAT AN ARREST FOR A MINOR MISDEMEANOR WAS NOT WARRANTED UNDER THE CIRCUMSTANCES OF THIS CASE OR LAWFUL UNDER R.C. 2935.26. THERE

WAS NO EVIDENCE THAT ANY REASONABLE PERSON WOULD HAVE CONSIDERED THEMSELVES UNDER ARREST IN THIS CASE.

MOREOVER, APPELLANT CANNOT BE CONVICTED OF RESISTING AN ARREST THAT WAS NEVER MADE. THE TRIAL COURT THEREFORE ERRED IN NOT GRANTING APPELLANT'S CRIM.R. 29 MOTION FOR AN ACQUITTAL IN THAT APPELLANT CANNOT BE FOUND RESISTING AN ARREST NEVER MADE AND AN ARREST THAT NEVER COULD HAVE BEEN LAWFULLY MADE IN VIOLATION OF THE HOLDING IN *STATE V. CARROLL*, 162 OHIO APP.3D 672.

EVEN IF APPELLANT WERE PROPERLY UNDER ARREST, THERE EXISTS INADMISSIBLE, SPECULATIVE, CONJECTURE, WHICH IS NOT EVIDENCE, AS TO WHAT APPELLANT KNEW OR SHOULD HAVE KNOWN GIVEN THE FACTS AND CIRCUMSTANCES HEREIN. THE TRIAL COURT WRONGFULLY ADMITTED EVIDENCE AMOUNTING TO SPECULATION ON THIS ISSUE."

**STANDARD OF REVIEW**

**{¶15}** A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence at trial. *State v. Blue*, 2002-Ohio-351 (5th Dist.), *citing State v. Williams*, 1996-Ohio-91. Crim.R. 29(A) grants the trial court with authority to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should overrule a Crim.R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the State, the court finds no rational finder of fact could find the essential elements of

the charge proven beyond a reasonable doubt. *State v. Franklin*, 2007-Ohio-4649, ¶12 (5th Dist.), *citing State v. Dennis*, 1997-Ohio-372.

{¶16} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley*, 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of the evidence to support a criminal conviction requires a court of appeals to determine whether; after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶17}** Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*. (Emphasis added.) Black's, *supra*, at 1594.

*Id.* at 387, 678 N.E.2d 541. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs* [*v. Florida*], 457 U.S. [31] at 42, 102 S.Ct. [2211] at 2218, 72 L.Ed.2d [652] at 661 [(1982)]. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the

exceptional case in which the evidence weighs heavily against the conviction.")

*Id.*

**{¶18}** Further, the Court in *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978), stated:

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts."
>
> * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at 80, fn.3, 461 N.E.2d 1273.

### I.

**{¶19}** In the appellant's first assignment of error, the appellant argues that his conviction for Domestic Violence was against the sufficiency and manifest weight of the evidence. We disagree.

**ANALYSIS**

{¶20} R.C. §2919.25(C) states, "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶21} In *State v. Cress*, 2006-Ohio-6501, ¶39, the Ohio Supreme Court stated the term "threat" "represents a range of statements or conduct intended to impart a feeling of apprehension in the victim." Therefore, "there must be some evidence that a victim either stated, or from other evidence it could be inferred, that the victim thought the accused would cause imminent physical harm." *City of Hamilton v. Cameron*, 121 Ohio App.3d 445 (12th Dist.1997).

{¶22} At trial, the victim herself testified that she believed herself to be in danger of imminent physical harm. The appellant threatened to drive his car through her apartment. She testified that she saw his vehicle lined up toward the house and heard him revving the engine. The victim gathered her children to the farthest point in the apartment away from the appellant's vehicle. She briefly left the apartment to get away until a friend notified her that the police were on the way. In addition to the victim's testimony, the State submitted the profanity-laden threats the appellant sent D.K. The appellant said he was going to drive through her front door, that she would hear him coming, and that he would run the prison. Accordingly, we find the State presented legally sufficient evidence to support the jury verdict as a matter of law. Furthermore, we find that this is not an exceptional case in which the jury clearly lost its way, nor did it create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**{¶23}** The appellant's first assignment of error is overruled.

**II.**

**{¶24}** In the appellant's second assignment of error, the appellant argues that his conviction for Resisting Arrest was against the sufficiency and manifest weight of the evidence. We agree.

**ANALYSIS**

**{¶25}** R.C. §2921.33(A) states, "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

**{¶26}** " 'An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretend authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.' " *State v. Darrah*, 63 Ohio St.2d 22, 26 (1980), *quoting State v. Terry*, 5 Ohio App.2d 122, 128 (1966).

**{¶27}** In the case *sub judice*, former Deputy Pettet testified that he did not inform the appellant that he was under arrest. Furthermore, when asked if the former deputy intended to arrest the appellant, Pettet testified that he did not intend to arrest the appellant, but intended to detain him until the former deputy obtained all the information. Former Deputy Pettet also testified that he knew that an arrest and a detention are different and that he did not attempt to arrest the appellant. The former deputy also testified that he told the appellant, "If you are going to run, run. Now's your chance", instructing him to leave. The State presented no conflicting evidence that a lawful arrest occurred or was even attempted. Therefore, we find the State did not present sufficient evidence to show the appellant resisted or interfered with a lawful arrest as no arrest

occurred, former Deputy Pettet did not intend to arrest the appellant, and the appellant was instructed to leave the scene.

{¶28} Accordingly, the appellant's second assignment of error is sustained.

## CONCLUSION

{¶29} The judgment of the Morgan County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

By: Baldwin, P.J.

Hess, J. and

Smith, J. concur.